```
                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE MIDDLE DISTRICT OF GEORGIA
                             ATHENS DIVISION

MIEKEI THOMAS,                    *
      Plaintiff,                  *
vs.                               *
                                         CASE NO. 3:16-CV-22 (CDL)
KDI ATHENS MALL LLC,              *
      Defendant.                  *
```

## O R D E R

Plaintiff Miekei Thomas occasionally shopped at Georgia Square Mall in Athens, Georgia, which is operated by Defendant KDI Athens Mall LLC. On February 11, 2015, the head of mall security accused Thomas of being a repeat shoplifter and barred Thomas from the mall for two years. Thomas, who is black, contends that she was barred from the mall because of her race, and she asserts claims against KDI under 42 U.S.C. § 1981. KDI seeks summary judgment on Thomas's claims. As discussed below, the Court grants KDI's summary judgment motion (ECF No. 19).

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment,

the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Viewed in the light most favorable to Thomas, the record reveals the following. KDI operates Georgia Square Mall in Athens, Georgia. During the timeframe relevant to this action, Alicia Goss was a marketing director at the mall. One of Goss's responsibilities was tenant relationship management. Goss's supervisor was Gwendolyn Motley. In early 2015, the manager of the mall's Victoria's Secret store told Goss and Motley about a shoplifting problem at the store; Goss and Motley worked to remedy the issue.

On February 11, 2015, Thomas went shopping at the mall. Thomas, who is black, was accompanied by two friends: Tyronza Potts, who is black, and Cassandra Cunningham, who is white. Thomas purchased items from the AT&T store and Victoria's Secret. When Thomas and her friends left the Victoria's Secret store, Thomas observed three police officers and three security guards looking at her; one of the security guards "was

describing a suspect by indicating a larger size to one of the police officers." Pl.'s Aff. ¶ 4, ECF No. 21-3. Thomas was approached by Goss, two security guards, and three police officers. Goss, who is black, identified herself as the head of mall security. One of the police officers told Thomas that Goss identified her as someone who had been stealing from multiple stores in the mall. Although Goss did not observe Thomas shoplifting that day, she told the police officer that Thomas had stolen from several stores multiple times in the past. The officer told Thomas that Goss wanted Thomas barred from the mall.

Thomas denied stealing from any store in the mall at any time, told Goss that she had only been to the mall a handful of times before that day, and suggested to Goss that it was "a case of mistaken identity." *Id.* ¶ 13. But Goss told Thomas that she had received complaints about Thomas shoplifting from multiple stores in the mall. Thomas asked Goss for proof of the alleged shoplifting, and Goss responded that she had photographs and videos that showed Thomas shoplifting at the mall. *Id.* ¶ 7. Goss did not produce these photographs and videos to Thomas.

Goss told Thomas that she was being barred from the mall for stealing, and she signed a notice barring Thomas from the mall for two years. Thomas signed the notice. Neither Goss nor any of the security guards or police officers mentioned Thomas's

3

race during the incident. After Thomas received the notice from Goss, she and her friends left the mall. Thomas has not attempted to go back to the mall since she received the notice.

Before February 11, 2015, Thomas had not been to the mall more than five times. *Id.* ¶ 12. When she did go to the mall, it was to accompany her minor daughter to see an optometrist for treatment of a chronic eye condition. *Id.* Since being barred from the mall, Thomas had to find a different optometrist for her daughter. *Id.* ¶ 15.

## DISCUSSION

Section 1981 prohibits certain types of racial discrimination. "To state a claim for non-employment discrimination under § 1981, a plaintiff must allege (1) [s]he is a member of a racial minority, (2) the defendant intended to racially discriminate against [her], and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Jimenez v. WellStar Health Sys.*, 596 F.3d 1304, 1308 (11th Cir. 2010) (footnote omitted). The rights enumerated in § 1981 include the right to make and enforce contracts. 42 U.S.C. § 1981(a).

Here, it is undisputed that Thomas is a member of a racial minority. Thomas presented evidence from which a juror could conclude that she had a continuing contractual relationship with an optometrist at the mall and that she would have continued

4

that contractual relationship had KDI not barred her from the mall. The remaining question, therefore, is whether Thomas presented sufficient evidence to establish that KDI intentionally discriminated against her because of her race.

Thomas did not offer any direct evidence of racial discrimination. Typically, a plaintiff with no direct evidence of discrimination attempts to make "a case of discrimination through indirect evidence using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012). Under that framework, a plaintiff must make a prima facie case of discrimination; Thomas may do so in this non-employment § 1981 case by showing that (1) she is a member of a racial minority, (2) KDI interfered with her § 1981 right to make and enforce contracts, and (3) KDI treated similarly situated individuals outside Thomas's racial minority more favorably. *Cf., e.g., Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (listing elements of a prima facie case of racial discrimination in the employment context). If a plaintiff makes out a prima facie case of discrimination, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions." *Gate Gourmet, Inc.*, 683 F.3d at 1255. If the defendant meets this burden, "the

5

burden shifts back to the plaintiff, who must show that the articulated reason is merely a pretext for discrimination." *Id.*

Here, Thomas did not present any evidence that KDI treated similarly situated individuals outside her protected class more favorably. Thomas's claim is akin to a disparate discipline claim in the employment context. In such cases, "similarly situated" means that the plaintiff and a comparator were "involved in or accused of the same or similar conduct and [were] disciplined in different ways." *Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)). Thomas emphasizes that neither she nor her friends personally saw white individuals stopped for shoplifting at the mall or barred from the mall for shoplifting. But Thomas did not point to any evidence that white individuals identified by mall security personnel as repeat shoplifters were not barred from the mall as she was.

Thomas argues that her failure to point to similarly situated comparators outside her protected class is not fatal to her claim. She points out that the *McDonnell Douglas* framework is not the only way to establish intentional discrimination via circumstantial evidence. Thomas is correct that her "failure to produce a comparator does not necessarily doom [her] case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir.

6

2011). "[T]he plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a triable issue concerning . . . discriminatory intent." *Id.* "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.* (footnote omitted) (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011), *overruled by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

In *Smith*, for example, although the plaintiff did not produce evidence that a similarly situated comparator was treated more favorably than he was, he did present evidence that his employer (1) considered the race of its employees during several discipline investigations and treated black employees more favorably than white employees who engaged in nearly identical conduct and (2) had an incentive to treat white employees more harshly than black employees due to a public relations debacle surrounding the employer's alleged tolerance of discriminatory harassment against black employees. *Id.* at 1336, 1341-46. In other words, the *Smith* plaintiff presented evidence from which a jury could conclude that white employees were actually disciplined differently than black employees, thus creating an inference of discrimination.

In contrast, here, Thomas simply speculates that because she and her friends did not personally witness any white individuals being barred from the mall, Thomas must have been barred because of her race. That is not "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by" KDI's security personnel. *Id.* at 1328 (footnote omitted) (quoting *Silverman*, 637 F.3d at 734). The Court is therefore not persuaded that Thomas presented enough evidence to create a prima facie case of race discrimination.

Even if the Court were to find that Thomas established a prima facie case of race discrimination, KDI offered a legitimate nondiscriminatory reason for banning Thomas from the mall: Goss believed that Thomas was a repeat shoplifter. To survive summary judgment, Thomas must point to evidence that this proffered reason is pretext for discrimination. A "plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the [decisionmaker] or indirectly by showing that the [decisionmaker]'s proffered explanation is unworthy of credence.'" *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Burdine*, 450 U.S. at 256).

Here, Thomas argues that she did not shoplift anything from the mall and that Goss refused to provide her with evidence

8

substantiating her allegations against Thomas.  But Thomas appears to acknowledge that Goss *believed* that Thomas was a repeat shoplifter.  In fact, Thomas suspects that this was "a case of mistaken identity."  Pl.'s Aff. ¶ 13.  In other words, Thomas does not seriously dispute that Goss honestly believed that a woman fitting Thomas's description was a repeat shoplifter.  Under these circumstances, the Court finds that Thomas has not presented sufficient evidence to create a genuine fact dispute on pretext.  *Cf. Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989) ("The law is clear that, even if a [plaintiff] did not in fact commit the violation with which he is charged, a [decisionmaker] successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the [plaintiff] committed the violation.").  Without evidence of pretext, Thomas's racial discrimination claims fail.

## CONCLUSION

In summary, Thomas did not point to sufficient evidence that she was barred from the mall because of her race.  The Court thus grants KDI's summary judgment motion (ECF No. 19).

IT IS SO ORDERED, this 14th day of March, 2017.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
